IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **GEORGE A. SHOEMAKE** | § | **PLAINTIFF** |
| | § | |
| v. | § | **Civil Action No. 1:06cv426-HSO-JMR** |
| | § | |
| **RENTAL SERVICE CORP.,** | § | |
| **PRIME EQUIPMENT & SUPPLY CORP.** | § | **DEFENDANTS** |

## ORDER AND REASONS DENYING DEFENDANTS' FIRST AND SECOND MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY

BEFORE THE COURT is a Motion for Summary Judgment [37] pursuant to FED. R. CIV. P. 56, filed on March 5, 2007, on behalf of Defendants Rental Service Corporation ("RSC") and Prime Equipment & Supply Corp. ("Prime"), in the above captioned cause. Plaintiff filed a Response [56], Supplemental Unsworn Declaration [62] in support of his Response, Surrebuttal [158], and Supplemental Opposition [170]. Defendants filed a Reply [63] to Plaintiff's Response and a Reply [177] to Plaintiff's Supplemental Opposition.

Also before the Court is a Motion for Partial Summary Judgment on the Issue of Liability [72] pursuant to FED. R. CIV. P. 56, filed on May 10, 2007, on behalf of Plaintiff George A. Shoemake. Defendants filed a Response [82] and Plaintiff filed a Reply [95]. Plaintiff filed a Supplemental Motion [167] on October 30, 2007. Defendants filed a Response [175] to Plaintiff's Supplemental Motion. Plaintiff then filed a Reply [181].

Defendants have also filed a second Motion for Summary Judgment [131], on

September 28, 2007.  Plaintiff filed a Response [148] and Defendants filed a Reply [165].  Plaintiff filed a Surrebuttal [186] and Defendants filed a Response [200] to Plaintiff's Surrebuttal.

After consideration of the submissions and the relevant legal authorities and for the reasons discussed below, the Court finds that both Motions for Summary Judgment filed by Defendants must be denied, and that the Motion for Partial Summary Judgment filed by Plaintiff must be denied.

## I. FACTS AND PROCEDURAL HISTORY

W.G. Yates & Sons Constrution  ("Yates") / Whitesell-Green ("Whitesell"), a joint venture, contracted with Keesler Air Force Base ("KAFB") to renovate, build and/or repair buildings in Biloxi, Mississippi.  To assist with the project, Yates subcontracted R.W. Lindsey Erection Company, Inc. ("Lindsey"), who in turn hired union ironworkers to perform work on the job.  Two of these union ironworkers included Plaintiff and Arland Parker ("Parker").

On or about April 24, 2003, Parker was operating a rough terrain forklift in the course of his work on the KAFB project when he struck a steel beam, which fell on Plaintiff.  Plaintiff sustained debilitating injuries and is now confined to a wheelchair.  At the time of the accident, Parker was purportedly licensed to operate rough terrain forklifts and carried a "certification card" to this effect, which had been issued by Defendant Prime in May 2000.

RSC and Prime merged in 2001, and thereafter operated only under the RSC

name. Prior to the merger, Prime performed Occupational Safety and Health Administration ("OSHA") training for operators of power industrial trucks. This training continued after the merger and until January 2003.[1]

Plaintiff filed his Complaint on or about April 24, 2006, alleging individual, joint and/or concurrent negligence as to Defendants RSC, Prime, Yates, and Whitesell as to the following:

    (a)    Failing to adequately train the driver of the forklift regarding the safe and proper use of the forklift;
    (b)    Failing to comply with applicable federal and consensus safety standards and regulations;
    (c)    Failing to warn the driver and others of the inherent dangers in the forklift;
    (d)    Allowing unsophisticated and unknowledgeable individuals to be certified in the use and operation of the forklift and, as such, creating an unreasonable hazard;
    (e)    Failing to adequately train or supervise those who certified the driver involved in this case;
    (f)    Failing to inspect and/or maintain the subject forklift;
    (g)    Failing to maintain a safe worksite;
    (h)    Failing to adequately secure the metal beam which struck Plaintiff; and
    (i)    Other acts and omissions to be proven at the time of trial.

Pl.'s Compl. at ¶ 16.

Plaintiff also alleges that the acts and omissions of Defendants constituted "willful and reckless misconduct and gross negligence indicative of a reckless disregard for the rights of others," entitling him to punitive damages. *See* Pl.'s Compl. at ¶ 18.

By Order dated February 6, 2007, this Court granted Plaintiff's *ore tenus*

---

[1]Defendants were also in the business of leasing heavy equipment.

Motion to Dismiss his claims against Yates and Whitesell. *See* Ct. Order no. 26. RSC and Prime are the only remaining Defendants in the case. Though not apparent from the Complaint, it appears based upon the record as a whole that the only remaining claims are those for failure to properly train Parker, the operator of the forklift, and for punitive damages.

In their first and second Motions for Summary Judgment, Defendants argue that (1) there was no duty owed by Defendants, nor was there a causal link between Defendants' conduct and the events giving rise to Plaintiff's injuries, since the forklift operated by Parker was not owned by or rented from Defendants, and since the employer is the party held responsible under OSHA for employee training; and (2) there is insufficient evidence to warrant an award of punitive damages.

Plaintiff, on the other hand, asserts that partial summary judgment on the issue of liability is warranted in his favor since the accident was caused by Parker's negligent operation of the forklift, and since the forklift training provided to Parker by Prime was inadequate under industry standards.

## II. DISCUSSION

A.  Applicable Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. The purpose of

summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *See Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp.2d 541, 543 (S.D. Miss. 1999).  With regard to "materiality," only those disputes of fact that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.  *See id.* (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial."  *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Booth*, 75 F. Supp.2d at 543.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The non-movant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *See Booth,* 75 F.

Supp.2d at 543.

Because this is a case of diversity jurisdiction, the Court must apply state substantive law.  *See Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938).

> The core of what has become known as the '*Erie* Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law.

*Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990).

B.   <u>Ownership of the Forklift</u>

Defendants maintain that since the forklift operated by Parker at the time of the accident was not owned by or rented from them, they cannot be held liable for Plaintiff's injuries.  *See* Br. in Supp. of Defs.' First Mot. for Summ. J. at 5-6; *see also* Br. in Supp. of Defs.' Second Mot. for Summ. J. at 5-6.  However, because Plaintiff has presented colorable evidence which he claims tends to establish Defendants' possible ownership and/or rental of the forklift, the Court cannot grant summary judgment in Defendants' favor on this basis.  *See* Westbrook Unsworn Declaration, attached as Ex. "A" to Pl.'s Supp. Unsworn Decl. in Resp. to Defs.' First Mot. for Summ. J (recalling that Prime Equipment delivered the equipment);[2] Pl.'s Dep. at

---

[2] Defendants criticize Plaintiff's use of the Unsworn Declaration of Danny Westbrook.  *See* Defs.' Reply to Pl.'s Resp. to Defs.' First Mot. for Summ. J. at p.3-4.  Defendants assert that Plaintiff 1) waited to produce the Declaration until the date their Reply was due; 2) failed to provide a complete transcript; and 3) failed to inform the Court that Westbrook had been incarcerated.  *See id.*  Because


p. 22-24, attached as Ex. "D" to Pl.'s Resp. to Defs.' First Mot. for Summ. J. (recalling seeing the "Prime Equipment" logo on the forklift); Flores Aff., attached as Ex. "E" to Pl.'s Resp. to Defs.' First Mot. for Summ. J. (recalling seeing the "Prime Equipment" logo on the forklift).[3] Nevertheless, *even if* ownership or rental of the forklift were not in dispute, summary judgment would remain inappropriate since the Court is of the opinion that these issues are not dispositive of Plaintiff's "failure to properly train" claim.

C.   Negligence and Causation

Plaintiff contends that summary judgment in his favor should be granted on the issue of liability since the record establishes that the April 24, 2003, accident resulted from a negligent act by Parker, and that such negligence was caused by improper training provided by Prime. *See* Br. in Supp. of Pl.'s Mot. for Partial Summ. J. at p. 12-13. Though Plaintiff presents evidence which tends to support his contentions, the record also contains contrary evidence. *Compare* Contractor Significant Incident Report, attached as Ex. "5" to Pl.'s Reply to Defs.' Resp. to Pl.'s

---

Defendants did not file a formal Motion to Strike and because the Court finds Westbrook's statement cumulative of evidence already in the record, the Court is of the opinion that the statement is not prejudicial and may be used in support of Plaintiff's case at this time.

[3] The Court finds it immaterial that Prime was no longer in business at the time of the accident, nor does the Court find it significant that the evidence suggests the forklift carried the "Prime" logo rather than the "RSC" logo. *See* Defs.' Reply to Pl.'s Resp. to Defs.' First Mot. for Summ. J. at p. 2-3. It is undisputed that Prime and RSC merged in 2001 and continued to operate under the RSC name thereafter. *See id.*

Suppl. Mot. for Summ. J. (attributing a portion of fault of the accident to the forklift operator), *with* Pate Dep. at p. 31, 33, attached as Ex. "F" to Defs.' Second Mot. for Summ. J. (stating his investigation showed no evidence of a safety violation associated with the act).[4]  Because these factual disputes are material ones, summary judgment is not appropriate.

In addition, summary judgment is

> ordinarily (but not always) inappropriate when the issue involves negligence or contributory negligence, 10 Wright, Miller, and Kane, Federal Practice and Procedure, § 2729 (2d ed. 1983), since "even where there is no dispute as to the facts, it is usually for the jury to decide whether the conduct in question meets the reasonable man standard."

*Matthews v. Ashland Chemical, Inc.*, 703 F.2d 921, 925 (5th Cir. 1983)(citing WRIGHT, MILLER & KANE, *supra*, § 2729); *see also Gordy v. City of Canton, Miss.*, 543 F.2d 558, 564 (5th Cir. 1976)(finding that under Mississippi law, the issues of comparative and contributory negligence are questions for a jury).

Here, the Court is of the opinion that the reasonableness of Parker's actions,

---

[4]The Court is aware that the expert report of Dennis R. Howard expresses Howard's opinion that Parker's negligence caused the April 24, 2003, accident, and that such negligence resulted from improper forklift training by Prime. *See* Howard Report, attached as Ex. "1" to Pl.'s Reply to Defs.' Resp. to Pl.'s Supp. Mot. for Partial Summ. J.  The Court is also aware that the expert reports of David Hoover and James W. Stanley support Defendants' position that the accident did not result from improper training and certification of Parker.  *See* Hoover Expert Report, attached as Ex. "C" to Defs.' Resp. to Pl.'s Mot. for Partial Summ. J.; Stanley Expert Report, attached as Ex. "D" to Defs.' Resp. to Pl.'s Mot. for Partial Summ. J.  In light of the pending Motion to Strike [133] Howard as an expert witness and the pending Motions in Limine to Limit or Exclude the Testimony of Hoover [192] and Stanley [190], which the Court does not decide at this time, and because the record otherwise demonstrates fact questions as to the issues of negligence and causation, the Court finds it unnecessary to consider the reports of Howard, Hoover, or Stanley for purposes of resolving the pending summary judgment motions.

as well as those of any other relevant person or entity, are most properly determined by the jury after hearing the evidence. *See Matthews*, 703 F.2d at 925-926(citing *Gross v. Southern Railway Company*, 414 F.2d 292, 296 (5th Cir. 1969)).

D.     Proper Training

Plaintiff asserts that the incident resulted from Defendants' failure to properly train Parker pursuant to OSHA and industry standards. *See* Pl.'s Mot. for Partial Summ. J. at p. 4. Defendants reject Plaintiff's contention and instead claim that summary judgment should be granted in their favor since the employer is ultimately responsible for employee training under OSHA regulations. *See* Br. in Supp. of Defs.' Second Mot. for Summ. J. at p. 7-9. Based on the evidence before the Court, summary judgment on the basis of these arguments would be inappropriate in favor of either party.

Chapter 29, section 1910.178 of the Code of Federal Regulations, promulgated under OSHA, governs operation of powered industrial trucks, which includes rough terrain forklifts. *See* 29 CFR § 1910.178; *see also* Powered Industrial Truck Operator Training; Final Rule, 63:66237-66274 (Dec. 1, 1998), attached as Ex. "J" to Pl.'s Resp. to Defs.' Second Mot. for Summ. J.[5] This regulation provides certain guidelines that must be followed when training individuals in the operation of such vehicles. *See id; see also* Pl.'s Br. in Supp. of Mot. for Partial Summ. J. at 3; *see also* Pagan Dep. at p. 60, attached as Ex. "F" to Pl.'s Resp. to Defs.' Second Mot.

---

[5]The final rule can also be found at Powered Industrial Truck Operator Training, 63 Fed. Reg. 66238-01 (Dec. 1, 1998)(codified at 29 CFR 1910.178(1)).

for Summ. J.

In 1999, OSHA revised section 1910.178 to implement more stringent training requirements. *See* England Dep. at p. 23-24, attached as Ex. "A" to Pl.'s Resp. to Defs.' Second Mot. for Summ. J.; Pate Dep. at p. 12, attached as Ex. "E" to Pl.'s Supp. Mot. for Partial Summ. J. Pursuant to this revision, OSHA does not require that an employer instruct its employees directly, but instead permits third parties to conduct the training.[6] *See* Powered Industrial Truck Operator Training; Final Rule, 63 Fed. Reg. 66237-66274 (Dec. 1, 1998), attached as Ex. "J" to Pl.'s Resp. to Defs.' Second Mot. for Summ. J.(stating that "[s]ince the proposal, OSHA has changed the language of the final rule to clarify that the employer does not need to administer the training but may have it provided by an outside training provider."). The record reflects that Prime, as a third party trainer, adapted its training manual to ensure operators received the heightened training requirements under the revisions. *See* England Dep. at p. 47-49, attached as Ex. "C" to Defs.' Reply to Pl.'s Resp. to Defs.' Second Mot. for Summ. J; *see also* Prime Operator Training Manual at p. 7, attached as Ex. "M" to Pl.'s Resp. to Defs.' Second Mot. for Summ. J.

The revised section 1910.178 contains provisions for training, as well as for duplicative training. Training must consist of

---

[6]The Court acknowledges the pending Motion in Limine to Exclude Evidence Applying Incorrect OSHA Standard [196]. Though the Court reserves ruling on the subject Motion until it is fully briefed, the plain language of the regulation and the final rule permit outside parties to conduct OSHA training.

> a combination of formal instruction (e.g. lecture, discussion, interactive computer learning, video tape, written material), practical training (demonstrations performed by the trainee), and evaluation of the operator's performance in the workplace.

29 CFR § 1910.178(l)(2)(ii).

The provision for duplicative training, on the other hand, provides that

> [i]f an operator has previously received training in a topic specified in paragraph l(3) of this section, and such training is appropriate to the truck and working conditions encountered, additional training in that topic is not required if the operator has been evaluated and found competent to operate the truck safely.

29 CFR § 1910.178(l)(5).

The regulation also provides that "[a]n evaluation of each powered industrial truck operator's performance shall be conducted at least once every three years." 29 CFR § 1910.178(l)(4)(iii).

There is no serious dispute among the parties that some training was provided by Prime to Parker in May 2000, or that Parker received prior training on rough terrain forklifts sometime in the 1990's. *See* Parker Dep. at p. 48, attached as Ex. "B" to Pl.'s Supp. Mot. for Partial Summ. J. Disputes exist, however, as to the extent of the training actually provided by Prime in May 2000 and the amount of training Prime was required to provide pursuant to the subject regulation and industry standards.

The record reveals three different versions of the training Parker received from Prime in May 2000. Parker testified in his deposition that he received ten minutes of instruction by Prime and thereafter received a certification card;

-11-

Lindsey, Plaintiff's employer on the KAFB project who was purportedly present during the May 2000 training session, testified in his deposition that thirty minutes of verbal instruction was provided, as well as hands-on training with the equipment. *See* Parker Dep. at p. 7-11, attached as Ex. "B" to Pl.'s Supp. Mot. for Partial Summ. J.; Lindsey Dep. at p. 45-46, attached as Ex. "D" to Pl.'s Mot. for Partial Summ. J. Mike England, the Prime employee who administered the training in May 2000, testified in his deposition that the three basic training components under OSHA and Prime standards included a written test, video or classroom presentation, and hands-on training, which entailed observing the operator on the equipment. *See* England Dep. at p. 39, attached as Ex. "D" to Defs.' Resp. to Pl.'s Supp. Mot. for Partial Summ. J. According to England, if Parker received a Prime certification card with his signature, then Parker received the full training session. *See id.* at 77.

There also appears to be disagreement as to the training required under the regulation at issue. For instance, the record reflects disputes as to what constitutes proper "evaluation" under the duplicative training provision and the three year re-evaluation provision. *See* Pate Dep. at p. 86, 92, attached as Ex. "E" to Pl.'s Supp. Mot. for Partial Summ. J. (stating "OSHA doesn't use the word 'retrained.' They say 'evaluate.' And that leaves it open. Some people say, yes, you've got to be retrained and you've got to have another card. I personally feel that...at the end of three years if you are familiar with that operator's style, you don't have to sit down and do a formal evaluation, it's ongoing....OSHA says you will re-evaluate. That is

interpreted by retraining or re-evaluating.  It's a bit ambiguous as to what "evaluate" means.").

Finally, the Court is not persuaded by Defendants' argument that summary judgment is warranted on the grounds that Plaintiff's employer is the party held responsible for violations of OSHA regulations.  *See* Br. in Supp. of Defs.' Second Mot. for Summ. J. at p. 7-9.  In a civil case, a plaintiff is afforded the right to use OSHA violations as evidence of negligence against a non-employer and have the trier of fact weigh this evidence, along with all other evidence presented at trial, in making a liability determination.  *See Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 713 n.22 (5th Cir. 1981); *Comardelle v. Sears, Roebuck & Co.*, No. Civ. A. 95-1371, 1996 WL 63100, at *1-2 (E.D. La. Feb. 14, 1996).

E.   Punitive Damages

Defendants contend that the record is devoid of any evidence of acts by Prime or RSC arising above simple negligence, such that Plaintiff's claim for punitive damages should be dismissed.  *See* Br. in Supp. of Defs.' First Mot. for Summ. J. at p. 6-8; Br. in Supp. of Defs.' Second Mot. for Summ. J. at p. 9-10.  Due to the numerous questions of fact evident from the record, the Court declines to grant summary judgment on this claim at this time.  Defendants may reassert a motion for judgment on Plaintiff's punitive damages claim at trial, if appropriate.

III. CONCLUSION

Based upon the evidence in the record, fact questions remain on all issues thereby precluding summary judgment in favor of either party.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited more fully herein, the Motions [37, 131] of Defendants Rental Service Corporation and Prime Equipment & Supply Corp., for Summary Judgment, filed on March 5, 2007, and September 28, 2007, respectively, pursuant to FED. R. CIV. P. 56, should be and are hereby **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons cited more fully herein, the Motion [72] of Plaintiff George A. Shoemake, for Partial Summary Judgment on the Issue of Liability, filed on May 10, 2007, pursuant to FED. R. CIV. P. 56, should be and is hereby **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 3rd day of January, 2008.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE